1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

CLYDE McKNIGHT,

Defendant.

CR18-16 TSZ

ORDER

THIS MATTER comes before the Court on defendant Clyde McKnight's motion, docket no. 443, to reopen his detention hearing pursuant to 18 U.S.C. § 3142(f) or, in the alternative, for temporary release pursuant to 18 U.S.C. § 3142(i).  Also before the Court is the Government's unopposed motion, docket no. 438, for an order continuing trial in this matter.  Having reviewed defendant's motion, the Government's response,[1] docket no. 445, and defendant's reply, docket no. 446, as well as the Government's unopposed motion relating to the trial date, the Court enters the following order.

**Discussion**

**A.    Reopening of Detention Hearing**

District courts across the country have been inundated with motions similar to the one now before the Court.  Indeed, on April 10, 2020, the day that defendant's motion

---

[1] The Government's related motion, docket no. 444, for leave to file an overlength brief is GRANTED, and the Government's 16-page response is ACCEPTED.

noted for consideration, at least five orders denying motions brought under § 3142(f) were issued in various districts, and since then, no less than nine more have been entered. *See* *United States v. Flores-Lopez*, 2020 WL 1862599 (W.D. Wash. Apr. 14, 2020) (reversing a magistrate judge's decision to reopen detention hearing); *see also* *United States v. Boone*, 2020 WL 1865202 (E.D. Cal. Apr. 14, 2020); *United States v. Miller*, 2020 WL 1864633 (D. Mont. Apr. 14, 2020); *United States v. Smith*, 2020 WL 1864587 (D. Md. Apr. 14, 2020); *United States v. Urban*, 2020 WL 1862678 (N.D. Ohio Apr. 14, 2020); *United States v. Hussein*, 2020 WL 1853656 (D. Minn. Apr. 13, 2020); *United States v. Lake*, 2020 WL 1852435 (D. Colo. Apr. 13, 2020); *United States v. Calvert*, 2020 WL 1847754 (D. Kan. Apr. 13, 2020); *United States v. Robinson*, 2020 WL 1820089 (D. Md. Apr. 11, 2020); *United States v. Terrone*, 2020 WL 1844793 (D. Nev. Apr. 10, 2020); *United States v. Crumpler*, 2020 WL 1820580 (N.D. Ohio Apr. 10, 2020); *United States v. Zamorano*, 2020 WL 1820498 (D. Colo. Apr. 10, 2020); *United States v. Champion*, 2020 WL 1820488 (D. Mont. Apr. 10, 2020); *United States v. Cannon*, 2020 WL 1820087 (D. Md. Apr. 10, 2020).  In each of these cases, the pretrial detainee unsuccessfully relied on the current global crisis involving Coronavirus Disease 2019 ("COVID-19") in seeking to reopen the detention hearing.  What these decisions make clear is that COVID-19 does not support the reopening of a detention hearing because "the governing legal standard 'is *not* . . . the harms that [a defendant's] incarceration [might] cause (however substantial),'" but rather "'the danger' that 'would be posed *by the person's release*.'"  *Calvert*, 2020 WL 1847754 at *2 (quoting *United*

1    *States v. Lee*, 2020 WL 1541019 at *5 (D.D.C. Mar. 30, 2020) (emphasis in original,

2    quoting 18 U.S.C. § 3142(g)(4))).

3         A motion to reopen a detention hearing should ordinarily be considered by the

4    same judicial officer who conducted the detention hearing, *see* 18 U.S.C. § 3142(f); *see*

5    *also* 9B FED. PROC., L. ED. § 22:1914, but a referral of this matter is not possible because

6    the magistrate judge who issued the Detention Order, docket no. 16, has retired.  The

7    undersigned judge, who has been presiding over this case since its inception, has

8    therefore considered the motion and concludes that it may be denied without a hearing.

9    *See United States v. Stephenson*, 2020 WL 1811353 at *1 n.2 (W.D. Ky. Apr. 8, 2020)

10   (indicating that "ample authority" exists for the conclusion that motions under the Bail

11   Reform Act may be decided on the papers).  A detention hearing may be reopened if the

12   Court finds that "information exists that was not known to the movant at the time of the

13   hearing" and that such information has "a material bearing" on the issues of whether

14   defendant presents a flight risk and/or a danger to the community.  *See* 18 U.S.C.

15   § 3142(f).

16        Defendant contends that COVID-19, about which no one knew in February 2018,

17   when the Detention Order was entered, constitutes a basis for reopening the detention

18   hearing and releasing him to stay with his stepdaughter, who resides in Seattle.  As

19   explained by virtually every court to address the issue, COVID-19 does not "in and of

20   itself raise a change in circumstances that has a 'material bearing' on whether there are

21   conditions of release *for this Defendant* that will reasonably assure the safety of the

22   community."  *United States v. Dodd*, 2020 WL 1547419 at *2 (D. Minn. Apr. 1, 2020)

23

ORDER - 3

1   (emphasis in original).  In this matter, the Detention Order indicates that, in light of the

2   pending charges, a rebuttable presumption exists that defendant is a flight risk and a

3   danger to the community.  Order at 1 (docket no. 16).  The Detention Order further finds

4   that defendant fled to Oregon after he became aware of the investigation concerning his

5   criminal activities, that he was on supervision when a firearm and a substantial amount of

6   controlled substances were seized from his vehicle, that he has a history of assaultive

7   behavior, including a conviction for attempted murder, and that, while in custody for this

8   case, he assaulted another detainee.  _Id._ at 1-2.  The COVID-19 situation does not alter

9   these underlying facts, and it does not justify a conclusion different from the one set forth

10  in the Detention Order, namely that no condition or combination of conditions other than

11  detention will reasonably assure defendant's appearance as required and ensure public

12  safety.  _See id._ at 2; _see also Calvert_, 2020 WL 1847754 at *2; _United States v. Graham_,

13  2020 WL 1685912 at *5 (D. Minn. Apr. 7, 2020) ("While the Court is sympathetic to

14  Graham's concerns about the possibility of contracting COVID-19, such concerns have

15  no bearing, much less 'material bearing,' . . . on the question of Defendant's risk of flight

16  and the safety of the community under these facts.").

17      _United States v. Stephens_, 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020), on which

18  defendant relies, does not support a different result.  In that case, an individual named

19  Dante Stephens, who was held in custody on an alleged violation of supervised release,

20  successfully sought reconsideration of his bail conditions, and he was released subject to

21  the conditions of 24-hour home incarceration and electronic location monitoring.  _Id._ at

22  *1.  Stephens, who was on supervised release following a 30-month sentence for

23

ORDER - 4

1    racketeering conspiracy, had no prior convictions involving violent conduct.  *See id.* at

2    *2; *see also* Judgment (docket no. 1729, S.D.N.Y. Case No. CR15-95 AJN).  In addition,

3    Stephens had no prior firearm charges, and the Government's accusation at the initial

4    detention hearing that Stephens had been in "possession of a loaded firearm in proximity

5    to drugs" was undermined by later-discovered information, namely that the arresting

6    officer initially identified a person other than Stephens as holding a bag containing the

7    firearm at issue.  2020 WL 1295155 at *1-2.   This new evidence, combined with

8    considerations related to COVID-19, persuaded the *Stephens* Court that Stephens had

9    established "by clear and convincing evidence that he does not pose a danger to the

10   community."  *Id.* at *2.

11          *Stephens* is distinguishable.  Unlike Stephens, defendant Clyde McKnight has a

12   history of violent behavior, and he previously attempted to flee the jurisdiction.  He has

13   been charged with *inter alia* two counts of being a felon in possession of a firearm.

14   *See* Third Superseding Indictment (docket no. 290).  According to the Government,

15   defendant's deoxyribonucleic acid (DNA) was found on both Glock pistols at issue, and

16   in contrast to *Stephens*, nothing revealed since the detention hearing in this case suggests

17   that someone other than defendant was in possession of the handguns.  Moreover, while

18   Stephens faced only the consequences of a supervised release violation, defendant in this

19   matter would, if convicted, be subject to a mandatory minimum sentence of fifteen years,

20   which raises substantially more concern about securing defendant's presence for hearings

21   and at trial.  Finally, the drug-trafficking conspiracy and money laundering charges with

22   which defendant is charged allegedly occurred while he was under Washington

23

1  Department of Corrections supervision for a controlled substance offense, _see_ Pretrial

2  Services Report at 8 (docket no. 8), suggesting an inability on defendant's part to comply

3  with the conditions of any release.  Unlike the detainee in _Stephens_, defendant in this

4  action has not and cannot demonstrate the requisite absence of flight risk or threat to

5  public safety.  Defendant's motion to reopen detention hearing is DENIED.

6  **B.     Temporary Release**

7          As an alternative to reopening the detention hearing, defendant has requested

8  temporary release.  Temporary release may be granted if the Court determines that

9  release is "necessary for preparation of the person's defense or for another compelling

10  reason."  _See_ 18 U.S.C. § 3142(i).  The relief authorized by § 3142(i) is to be used

11  "sparingly."  _See United States v. Boatwright_, --- F. Supp. 3d ---, 2020 WL 1639855 at *4

12  (D. Nev. Apr. 2, 2020) (observing that "little guidance exists" concerning what qualifies

13  as a "compelling reason" for temporary release, but that courts have granted motions

14  when the detainee was suffering from a terminal illness or serious injuries, like gunshot

15  wounds, as to which the Bureau of Prisons could not provide the required medical care).

16  In the context of COVID-19, several courts have applied the four factors articulated in

17  _United States v. Clark_, --- F. Supp. 3d ---, 2020 WL 1446895 (D. Kan. Mar. 25, 2020),

18  one of the decisions cited by defendant in his motion.  _See Miller_, 2020 WL 1864633 at

19  *2-3; _Hussein_, 2020 WL 1853656 at *4; _Lake_, 2020 WL 1852435 at *3; _Boatwright_,

20  2020 WL 1639855 at *4-8; _Dodd_, 2020 WL 1547419 at *3-4.

21          The _Clark_ Court announced that, in deciding a motion under § 3142(i), it would

22  evaluate (i) the original grounds for the defendant's pretrial detention, (ii) the specificity

23

1  of the defendant's stated COVID-19 concerns, (iii) the extent to which the proposed

2  release plan is tailored to mitigate, rather than exacerbate, the COVID-19 risks to the

3  defendant, and (iv) the likelihood that the defendant's release would increase the

4  COVID-19 risks of others.  2020 WL 1446895 at *3; _see Calvert_, 2020 WL 1847754 at

5  *3-4 (same judge as in _Clark_); _see also Stephenson_, 2020 WL 1811353 at *3 (noting that

6  the "compelling reason" standard requires a "particularized finding of necessity," as

7  suggested by the defendant in referring to a "'case-by-case' approach").  The Court

8  agrees that these considerations are appropriate and will be guided by them in ruling on

9  defendant's motion for temporary release.  As in _Clark_, the Court "will not necessarily

10  weigh these factors equally, but will consider them as a whole" to determine whether a

11  "compelling reason" supports defendant's motion under § 3142(i).  2020 WL 1446895 at

12  *3.

13        As already indicated, the original grounds for defendant's detention weigh against

14  his release.  Likewise, the second factor of specific COVID-19 concerns does not support

15  defendant's request under § 3142(i).  Defendant indicates that he is at higher risk of death

16  if infected with the coronavirus that causes COVID-19, but his concern is exaggerated.

17  His "comorbidities" of a gastrointestinal infection, which was apparently treated during a

18  recent hospitalization, food allergies, hypertension, and a family history of diabetes are

19  not among the risk factors identified by the Centers for Disease Control and Prevention

20  ("CDC") for serious illness from COVID-19.  Defendant refers to food allergies, but

21  makes no mention of "moderate to severe asthma," he describes having hypertension, but

22  not any "serious heart condition," and he mentions a family history of diabetes, but does

23

not report that he himself has diabetes.  *Compare* Def.'s Mot. at 1-2 (docket no. 443) *with*

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-

risk.html.  Thus, in contrast to the cases that he has cited,[2] defendant offers nothing more

than generalized fear and speculation, which do not constitute a "compelling reason" for

release.  *See* *Lake*, 2020 WL 1852435 at *3; *see also* *Hussein*, 2020 WL 1853656 at *4;

*Graham*, 2020 WL 1685912 at *5-6.

    As defendant concedes in his motion, no cases of COVID-19 have been identified

among the inmate population at the Federal Detention Center in SeaTac, Washington

("FDC SeaTac"), where defendant is presented housed.[3]  FDC SeaTac has managed the

situation by implementing screening and quarantine protocols, suspending social and

legal visits, as well as tours, and maximizing social distancing.  *See* Gov't Resp. at 9-10

(docket no. 445).  As explained in *Clark*, neither defendant nor anyone else can "predict

---

[2] In *United States v. Davis*, 2020 WL 1529158 (D. Md. Mar, 30, 2020), the pretrial detainee had no prior convictions, no history of violence, and no history of failing to appear for court hearings, but he suffered from bronchitis, a lung disorder that placed him within the high-risk group as defined by the CDC, *see id.* at *4-6, and in *United States v. Ramos*, 2020 WL 1478307 (D. Mass. Mar. 26, 2020), the defendant had both diabetes and asthma, and he had previously been hospitalized for influenza, *see id.* at *1.

[3] Defendant has recited the increasing numbers of inmates and staff members reported by the Bureau of Prisons ("BOP") as testing positive for COVID-19 or dying from the disease.  *See* Reply at 1 (docket no. 446).  The figures on which defendant relies, however, do not tell the whole story.  In fact, only three BOP facilities have reported inmate deaths, namely Federal Correctional Institution ("FCI") Elkton in Ohio, FCI Oakdale I in Louisiana, and FCI Butner Medium I in North Carolina, and only ten of BOP's 142 locations are experiencing a double-digit volume of inmate cases of COVID-19.  *See* https://www.bop.gov/coronavirus/ (last visited on Apr. 15, 2020).  Given the containment measures implemented by BOP, defendant's suggestion that the statistics on BOP's website demonstrate the inevitability or imminence of an uncontrolled outbreak of COVID-19 at FDC SeaTac simply ignores the science concerning coronavirus transmission.

ORDER - 8

1   the extent to which COVID-19 cases might arise at the facility" or how the facility

2   "might respond to an outbreak."  2020 WL 1446895 at *6.  What _is_ known is that

3   defendant is "at a facility that has implemented meaningful measures to try to minimize

4   the likelihood of the virus entering the facility." _Id._  Thus, the second prong of the _Clark_

5   standard supports denial of defendant's motion under § 3142(i).

6          The third and fourth _Clark_ factors also argue against release.  Defendant has made

7   no showing that he would be at lower risk for contracting COVID-19 while residing with

8   his stepdaughter; he has offered no information about her circumstances or the level of

9   exposure to the COVID-19 coronavirus that she and/or others residing in or visiting her

10  home have on a daily or weekly basis.  _See_ _Boatwright_, 2020 WL 1639855 at *7 (noting

11  that the defendant "fails to explain who else has or will live in or frequent the home or

12  identify any screening practice or concrete COVID-19 precautions taken there" and

13  "therefore offers nothing more than mere speculation that home detention would be less

14  risky than detention at [Nevada Southern Detention Center], which has screening

15  practices and other reasonable COVID-19 precautions in place"); _see also_ _Lake_, 2020

16  WL 1852435 at *3 (indicating that the defendant "has not explained how his proposed

17  release plan mitigates any danger to himself (other than removing him from the . . .

18  facility)").  In addition to the lack of any apparent benefit in reducing defendant's risk of

19  contracting COVID-19, his release would likely increase the peril of not only his

20  stepdaughter, but also Pretrial Services and law enforcement officers.  The ongoing

21  monitoring and supervision associated with any temporary release, and any need to take

22  defendant back into custody, would potentially expose officers to the coronavirus that

23

1  causes COVID-19.  *See Boatwright*, 2020 WL 1639855 at *8; *see also Urban*, 2020 WL

2  1862678 at *1 (observing that the defendant's proposal for immediate release "neglects

3  the burden such relief would place on Pretrial Services").

4       In addition to the considerations outlined in *Clark*, the Court has taken into

5  account the difficulties in communicating with counsel about which defendant complains.

6  Although the measures adopted by FDC SeaTac impact defendant's ability to meet face-

7  to-face with his attorney, temporary release would not alleviate this problem.  Even if

8  defendant were permitted to reside with his stepdaughter until the COVID-19 emergency

9  abates, he would still be subject to the stay-at-home directives issued by the Governor of

10 the State of Washington and the conditions of release imposed by the Court, and any

11 communications with his lawyer would necessarily need to be conducted telephonically

12 or via email.  Defendant has access, while at FDC SeaTac, to these same modes of

13 consulting with counsel.  *See Flores-Lopez*, 2020 WL 1862599 at *2 (indicating that,

14 although perhaps delayed or disrupted as a result of social distancing efforts at FDC

15 SeaTac, contact with counsel via CORRLINKS email and telephone is still available);

16 *see also Miller*, 2020 WL 1864633 at *4.  Defendant's motion for temporary release

17 under § 3142(i) is DENIED.

18 **C.    Continuance of Trial**

19      On March 6, 2020, in response to the outbreak of COVID-19 in Washington,

20 General Order No. 01-20 was issued.  Among other things, General Order No. 01-20

21 continued all criminal matters scheduled for an in-court appearance, including the trial in

22 this case.  The continuance was extended through June 1, 2020, by General Order

23

ORDER - 10

No. 02-20, which was issued on March 17, 2020.  Earlier this week, the continuance was further extended through July 1, 2020.  *See* General Order No. 07-20 (Apr. 13, 2020).  As indicated in each of the General Orders, a continuance of the trial in this matter is necessitated by the Court's inability to obtain an adequate spectrum of jurors and the effect of the current public health recommendations on the availability of witnesses, counsel, and Court staff to be present in the courtroom, and the ends of justice served by such continuance outweigh the best interest of the public in, and defendant's right to, a speedy trial.  *See* 18 U.S.C. § 3161(h)(7)(A).  The trial date of April 27, 2020, is CONTINUED to July 6, 2020, or a later date to be determined after consultation with the parties.  The period of time between April 27, 2020, and July 6, 2020, will be excluded under the Speedy Trial Act on grounds that the failure to continue the trial date would likely make the proceeding impossible or result in a miscarriage of justice.  *See id.* at §§ 3161(h)(7)(A) & (B)(i).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)    Defendant's motion, docket no. 443, to reopen his detention hearing or, in the alternative, for temporary release, is DENIED.

(2)    The Government's related motion, docket no. 444, for leave to file an overlength brief is GRANTED, and the Government's 16-page response, docket no. 445, is ACCEPTED.

(3)    The Government's unopposed motion, docket no. 438, for an order continuing the trial date is GRANTED as follows.  For the reasons set forth in this Order,

1   the trial date of April 27, 2020, is CONTINUED to July 6, 2020, or a later date to be

2   determined after consultation with the parties, and the period of time between April 27,

3   2020, and the new trial date shall be excluded under the Speedy Trial Act.

4        (4)     The Clerk is directed to send a copy of this Order to all counsel of record.

5   IT IS SO ORDERED.

6   Dated this 15th day of April, 2020.

7

8   _____

9   Thomas S. Zilly
    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 12