UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>CLYDE McKNIGHT,<br><br>                    Defendant. | CR18-16 TSZ<br><br>MINUTE ORDER |

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) The Government's motion to seal, docket no. 569, is GRANTED, and the Government's status report regarding CODIS, docket no. 570, shall remain under seal.

(2) Defendant's motion to dismiss, docket no. 524, for destruction of evidence, is DENIED. To establish that the failure to preserve evidence constitutes a constitutional violation for which dismissal is warranted, defendant must show that (i) the Government acted in bad faith, and (ii) comparable evidence cannot be obtained by other reasonably available means. *See*, *e.g.*, *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (citing *Arizona v. Youngblood*, 488 U.S. 51 (1988), *California v. Trombetta*, 467 U.S. 479 (1984), and *United States v. Cooper*, 983 F.2d 928 (9th Cir. 1993)). If the missing evidence is "materially exculpatory," as opposed to merely "potentially useful," bad faith need not be demonstrated, *see United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012) (citing *Illinois v. Fisher*, 540 U.S. 544 (2004)), but defendant makes no showing in this matter that the items at issue, namely "pole camera" footage, certain photographs, and a cell phone, are "materially exculpatory." Rather, defendant contends that the spoliated evidence might contradict certain information contained in an affidavit submitted in connection with an application for a tracking warrant. Defendant's assertion lacks merit.

   (a) "Pole Camera" Footage. Between September 11 and October 19, 2017, a camera mounted on a pole near a residence occupied by defendant's wife captured footage of the street in front of the home. The camera's view of the

MINUTE ORDER - 1

house was obstructed by foliage.  *See* Ex. 1 to Def.'s Mot. (docket no. 524-1).  Moreover, the camera was not equipped with night vision, and it was not positioned to observe vehicles that drove along or parked in the alley behind the dwelling.  *See id.*  During the period that the camera was operating, investigators routinely reviewed its footage, but they never saw defendant or any of the cars associated with him.  *Id.*  After the camera was removed, its recordings were deleted.  *See id.*  Defendant hypothesizes that the destroyed "pole camera" footage would have revealed that he was at the residence on September 19 and/or 20, 2017, rather than in Pioneer Square conducting a hand-to-hand transaction with an individual who later became a confidential source ("CS-1"), as indicated in the tracking warrant affidavit prepared by U.S. Drug Enforcement Administration Special Agent Kevin Palermo.  Defendant's suggestion is purely speculative.  The reason investigators ceased using the "pole camera" to surveil the street near defendant's wife's home and did not preserve its recordings is that they had seen no sign that defendant "lived [at] or frequented" the house.  *Id.*

(b) Photographs.  While observing defendant's activities in the Pioneer Square area on September 19 and/or 20, 2017, Seattle Police Detective Simon Edison attempted to take photographs, but he was unsuccessful (the photographs turned out "black"), and the related files were discarded.  *See* Ex. 3 to Def.'s Mot. (docket no. 524-1).  Defendant does not contend that the photographs, which he does not dispute were "black," might have proven he was either not in Pioneer Square or not engaged in a hand-to-hand transaction with CS-1 on the dates at issue.  Instead, defendant appears to argue that the metadata associated with the photographs might have reflected dates other than September 19 and/or 20, 2017, and thus, undermined Detective Edison's credibility concerning whether and, if so, when he saw defendant in Pioneer Square.  In other words, defendant accuses Detective Edison of notating in his report that he took photographs on a particular day and then snapping the pictures on a different day only to later destroy them in an effort to support the observations he described in his report.  This assertion is nonsensical.

(c) Cell Phone.  When CS-1 was arrested on September 23, 2017, a cell phone was seized and placed in the Seattle Police Department's evidence room.  *See* Knapp Decl. at ¶¶ 4-5 (docket no. 485-1).  CS-1 was again arrested on September 29, 2017.  *See* Knapp Case Notes, Ex. D to Def.'s Mot. to Suppress (docket no. 129-5).  At that time, CS-1 had a different cell phone.  *See* Knapp Decl. at ¶ 13 (docket no. 485-1).  On October 5, 2017, Seattle Police Detective Stephen Knapp obtained the cell phone seized on September 23, 2017, from the evidence room, took photographs of certain screens on the cell phone, manually copied information from the contact list, and then returned the phone to CS-1.  *Id.* at ¶¶ 9-12.  According to Detective Knapp, returning a seized cell phone to an individual who is cooperating with law enforcement is standard procedure.  *Id.* at ¶ 12.  One of the screens of the cell phone seized from CS-1 on September 23,

MINUTE ORDER - 2

2017, of which Detective Knapp took a photograph, showed a call or text at 9:41 p.m. on September 19, 2017, with someone known as "Pizza" at a number associated with defendant.  *See* Ex. 5 to Def.'s Mot. (docket no. 524-1) (a more legible copy is at Ex. A-2 to Def.'s Supp. *Franks* Exs. (docket no. 167-2 at 240-41) (Bates 009459-009460)); *see also* Palermo Aff., Ex. F to Def.'s Mot. (docket no. 129-7) (indicating that "Pizza" is defendant's nickname, and that defendant was believed to be using the number (425) 319-5483).  Defendant contends that investigators should have made a forensic copy of the cell phone seized from CS-1 on September 23, 2017, before returning it to CS-1 on October 5, 2017.  Defendant postulates that location data on the cell phone seized on September 23, 2017, would show that CS-1 was not in Pioneer Square on September 19 and/or 20, 2017, and could not have been conducting a hand-to-hand transaction with defendant during that period.  Defendant's theory is undermined by the cell phone itself, which revealed that CS-1 communicated on September 19, 2017, with a prepaid phone belonging to defendant.  Moreover, even if any location data on the cell phone had been preserved, it would indicate only where the phone had been, not where CS-1 had been, on the dates in question.  As acknowledged by defendant, CS-1 had more than one cell phone, *see* Reply at 3 (docket no. 545), and CS-1 could have taken a different phone to the Pioneer Square area.

In sum, defendant has not made the requisite threshold showing that the "pole camera" footage, photographs, and cell phone at issue would have been "materially exculpatory" or "potentially useful."  Thus, defendant cannot demonstrate that investigators knew of any "apparent exculpatory value of the evidence at the time it was lost or destroyed," and he has not established the "bad faith" necessary to obtain the relief he seeks.  *See Sivilla*, 714 F.3d at 1172.

(3)     The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 26th day of August, 2020.

William M. McCool
Clerk

s/Karen Dews
Deputy Clerk

MINUTE ORDER - 3